**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALL TESTS CLINICAL SOLUTIONS LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>HYPER STRATEGIES INC. and CAMINO REY LLC,<br><br>*Defendants.* | Civil No.: 23-cv-00314(KSH)(JBC)<br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

### I. Introduction

This matter comes before the Court on the motion (D.E. 32) of plaintiff All Tests Clinical Solutions LLC ("All Tests") for default judgment against defendant Hyper Strategies Inc. ("Hyper Strategies"). All Tests alleges that Hyper Strategies breached the parties' January 19, 2022 contract for COVID-19 Antigen home tests (the "home tests") by refusing to take delivery or pay the full balance due on the contract.

### II. Background

The complaint alleges as follows. All Tests is a corporation with its principal place of business in New Jersey. (D.E. 1, Compl. ¶ 3.) Hyper Strategies is a corporation with its principal place of business in Alberta, Canada. (*Id.* ¶ 6.) On January 18, 2022, Hyper Strategies submitted a purchase order to All Tests for 150,000 boxes of COVID-19 Antigen home tests at $5.00 a box. (*Id.* ¶¶ 14-16 & Ex. A.) The total order was valued at $750,000.00 with a required deposit by Hyper Strategies of $187,500.00. (*Id.* ¶¶ 16-17.) All Tests accepted the order and prepared shipment to its manufacturer/supplier. (*Id.* ¶ 19.)

1

The next day, Hyper Strategies determined it was unwilling or unable to pay the entire deposit due. (*Id.* ¶¶ 20-21.) It advised All Tests that it wished to "split" its January 18 order with a second buyer, Camino Rey LLC ("Camino Rey"), and that each party would submit revised purchase orders. (*Id.* ¶¶ 21-24.) All Tests agreed, and on January 19, 2022, Hyper Strategies and Camino Rey sent All Tests two purchase orders for 75,000 boxes of home tests each—splitting Hyper Strategies' initial order of 150,000 boxes. (*Id.* ¶¶ 21-25 & Ex. B.) All other terms of Hyper Strategies' January 18 purchase order remained the same; the home tests were priced at $5.00 per unit for a total cost of $375,000.00 each. (*Id.* ¶ 24 & Ex. B.) All Tests received the required deposits of $93,750.00 from both Hyper Strategies and Camino Rey, which represented 25% of the total purchase order. (*Id.* ¶¶ 33-35.)

All Tests acknowledged the revised purchase orders and submitted a purchase order for the 150,000 boxes of home tests to its manufacturer Acon Laboratories ("Acon"). (*Id.* ¶¶ 26-28 & Ex. C.) Acon acknowledged the order on January 19, and All Tests arranged for payment and delivery of the home tests. (*Id.* ¶¶ 28-30 & Ex. C.) Once the home tests were ready, All Tests notified Hyper Strategies and Camino Rey, but Hyper Strategies refused to take delivery or pay the balance due under the purchase agreement. (*Id.* ¶¶ 36-38, 41.)

Negotiation efforts were unsuccessful, and on January 20, 2023, All Tests sued Hyper Strategies and Camino Rey,[1] invoking federal diversity jurisdiction. (*Id.* ¶¶ 9, 11, 45-49.) Although Hyper Strategies was timely served through its managing director, Sajid Sayeed (D.E. 8, 9), it did not file an answer or other response to the complaint. On April 18, 2023, All Tests requested entry of default (D.E. 10) and the Clerk entered default the following day. On May 14,

---

[1] A settlement agreement was reached between All Tests and Camino Rey, and on May 15, 2024, this Court dismissed it from the present action. (D.E. 28.)

2024, All Tests moved for default judgment (D.E. 26), which this Court denied without prejudice for failure to adequately plead its requested damages (D.E. 29).  The Court permitted All Tests to file a renewed motion for default judgment within 21 days, which All Tests failed to do, and the Court entered an order to show cause as to why the case should not be dismissed.  (D.E. 30.)  All Tests responded that it had been collecting digital data to support its requested damages and the Court granted its request to immediately file a revised motion for default judgment.  (D.E. 31, 33.)

In support of its revised motion (D.E. 32), All Tests submitted a certification of counsel (D.E. 32-4), and the certification of Michael Tuckman, the managing member of All Tests (D.E. 32-2) ("Tuckman cert.").  All Tests seeks judgment in the amount of $93,750.00—essentially asking to keep the deposit it has already received from Hyper Strategies—and cancellation of the contract.

### III.    Legal Standard

The Court may enter default judgment under Fed. R. Civ. P. 55(b)(2) against a properly served defendant who fails to file a timely responsive pleading.  A party seeking default judgment is not entitled to that judgment as of right, rather "[t]he decision to enter a default judgment is 'left primarily to the discretion of the district court.'"  *Maersk Line v. TJM Int'l Ltd. Liability Co.*, 427 F. Supp. 3d 528, 532 (D.N.J. 2019) (Hillman, J.) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)).  In ruling on the motion, the Court accepts the well-pleaded factual allegations in the complaint, except those relating to damages, and must decide whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* at 533 (citation omitted).

In addition to determining that the facts state a legitimate cause of action and that the movant has established its damages, the Court must examine: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Trs. of Int'l Union of Painters v. Leo Consulting, LLC*, 718 F. Supp. 3d 436, 441 (D.N.J. 2024) (Bumb, C.J.) (quoting *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000)). The Court must also be satisfied that it has subject matter and personal jurisdiction, and that the defendant was properly served. *Id.*

## IV. Analysis

The preliminary requirements for entry of default judgment are met here. The Court has subject matter jurisdiction based on the parties' complete diversity and the amount in controversy exceeding $75,000. 28 U.S.C. § 1332.

The Court also has personal jurisdiction over Hyper Strategies. Fed. R. Civ. P. 4(f)(1) provides that an individual may be served outside the United States "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." *See also* Fed. R. Civ. P. 4(h)(2) (adopting Rule 4(f)'s requirements for extraterritorial service of corporations). New Jersey's long-arm statute, N.J. Ct. R. 4:4-4(a)(6), "permits service on nonresident defendants subject only to 'due process of law.'" *Avdel Corp. v. Mecure*, 58 N.J. 264, 268 (1971). In other words, New Jersey has authorized personal jurisdiction to the "uttermost limits permitted by the United States Constitution." *Id.*

"[D]ue process is satisfied if a contract sued upon has a 'substantial connection' with the forum state" "such that maintenance of the suit [in the forum state] does not offend principles of fairness." *Id.* at 270; *see O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)

4

(asserting the relevant inquiry under the Due Process Clause is whether "the defendant has 'certain minimum contacts with . . . [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice'" (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945))). The defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," to be subject to personal jurisdiction in the forum state. *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The Third Circuit has held that "in many instances, personal jurisdiction can arise primarily from a nonresident defendant's contract with a forum resident," such as "where the defendant solicited the contract or initiated the business relationship leading up to the contract," "where the defendant sent any payments to the plaintiff in the forum state," or "where the defendant engaged in extensive post-sale contacts with the plaintiff in the forum state." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001) (quoting *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 152-53 (3d Cir. 1996) (distinguishing cases)); *see also Avdel*, 58 N.J. at 269-73 (finding that the defendant's contacts with New Jersey were sufficient where "he ordered a product which he knew would have substantial business effects in [New Jersey], and followed up his order with numerous contacts . . . in relation to that contract").

Here, according to Tuckman's certification, Hyper Strategies placed two purchase orders with All Tests—which maintains its principal place of business in New Jersey. (Tuckman cert., ¶¶ 6-7, 11-13 & Exs. A-C.) Hyper Strategies sent these purchase orders to All Tests' South Orange, New Jersey address, and All Tests' invoices back to Hyper Strategies display the same

5

address.  (*Id.* & Exs. A-C.)  Before submitting its revised purchase order, Hyper Strategies "introduced Camino Rey and its principal[] to Plaintiff," and All Tests agreed that both companies could submit revised purchase orders and split Hyper Strategies' initial $750,000.00 order.  (*Id.* ¶¶ 25-31.)  Hyper Strategies sent a deposit of $93,750.00 to All Tests, and All Tests began arranging for delivery of 75,000 boxes of home tests to Hyper Strategies, valued at $375,000.00.  (*Id.* ¶¶ 30, 45 & Ex. C.)  Prior to filing the present action, All Tests and Hyper Strategies retained New Jersey-based lawyers to engage in settlement discussions regarding the breached contract.  (*Id.* ¶¶ 53-62 & Ex. F.)

Accepting these well-pleaded allegations as true, Hyper Strategies (1) initiated the contract by submitting a purchase order to All Tests at its South Orange, New Jersey address; (2) received an invoice from All Tests from that same address; (3) sent a deposit of $93,750.00 to All Tests in New Jersey; and (4) engaged in contacts with All Tests during and after the breach of contract.  The Court finds that Hyper Strategies purposefully availed itself of the privilege of conducting activities within New Jersey by ordering $375,000.00 worth of products from All Tests, and All Tests' filing of this lawsuit in New Jersey upon breach of that contract does not offend principles of fairness.  The Court thus has personal jurisdiction over Hyper Strategies for All Tests' breach of contract claim.

The proof of service All Tests filed demonstrates that Hyper Strategies was properly served via its managing director, Sajid Sayeed, pursuant to Fed. R. Civ. P. 4(f)(1) and 4(h)(2).  (D.E. 8, 9.)  The proof of service also provides that Sayeed was served "in accordance with a method prescribed by the internal laws of Alberta, Canada for civil matters within this jurisdiction and thus in accordance with Article 10(b) of the Hague Convention . . . on the Service Abroad of Judicial and Extrajudicial Documents."  (D.E. 9.)

Turning to the merits of All Tests' cause of action, the Court finds that the complaint sufficiently alleges a breach of contract claim against Hyper Strategies and no meritorious defense is evident from the record. For a claim of breach of contract under New Jersey law, a plaintiff must establish that (1) a valid contract exists between the parties, (2) the defendant failed to perform its obligations under that contract, and (3) the plaintiff suffered damages as a result. *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007).

Where, as here, the parties contract for a sale of goods, N.J.S.A. 12A:2-204(1) provides that that such a contract "may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." An offer—here, in the form of a purchase order to All Tests, and an expression of acceptance—here, in the form of All Tests' invoice and performance of the contract by ordering the tests from Acon and attempting to coordinate delivery to Hyper Strategies, is sufficient to form a contract. *See* N.J.S.A. 12A:2-206, -207(1). Accepting All Tests' allegations as true, All Tests and Hyper Strategies entered into a valid contract for the purchase and sale of home tests.

As demonstrated by the Tuckman certification, Hyper Strategies breached this valid contract by refusing to take delivery of the tests and pay the balance due on the contract. Additionally, the Court finds that Hyper Strategies' failure to appear or to file any response to the complaint has prevented All Tests from prosecuting this action and obtaining relief, to its prejudice. *See Barrett v. Tri-Coast Pharm., Inc.*, 518 F. Supp. 3d 810, 830 (D.N.J. 2021) (Kugler, J.) (finding that "because Tri-Coast Pharmacy has failed to appear or answer, Plaintiff will suffer prejudice if it does not receive default judgment because it has no other means of vindicating its claim"). And absent any evidence to the contrary, a "[d]efendant's failure to answer demonstrates [d]efendant's culpability in its default." *Teamsters Health & Welfare Fund*

7

*of Phila. v. Dubin Paper Co.*, 2012 WL 3018062, at *4 (D.N.J. July 24, 2012) (Simandle, C.J.). No such evidence of a reason other than Hyper Strategies' "willful negligence" is present here. *See id.*

Although the Court has found that the requirements for entry of default judgment are satisfied, it has found a disparity in All Tests' damages calculation. All Tests proposes to keep Hyper Strategies' deposit of $93,750.00 insofar as it represents compensation for lost profits and costs. (D.E. 32, at 2.) All Tests alleges that keeping the deposit would place it in the same position as though the contract had been performed. (*Id.*) According to All Tests' breakdown, it expected to make $1.00 on each home test, totaling $75,000.00 in lost profits (75,000 tests at $1.00 a test), "plus commissions it needed to pay its broker and costs." (Tuckman cert., ¶ 32 Exs. B-D.)

All Tests supports its $1.00 profit per home test by evidence that it paid $4.00 per home test to Acon and charged Hyper Strategies $5.00 a test. But it does not provide any support for the alleged broker costs beyond a one-page letter memorializing an agreement that All Tests would pay a broker a $0.50 fee per home test on the Hyper Strategies contract "[w]ithin 36 hours of full payment made by Hyperstrategies Inc." (D.E. 32 at 2-3; Tuckman cert., ¶¶ 36-37 & Ex. E.) All Tests does not allege or demonstrate that it did pay that broker fee after Hyper Strategies failed to make full payment on the contract. Nor does it explain how this broker fee increases, rather than decreases, its lost profits and thus its damages.

Under Fed. R. Civ. P. 55(b)(2), the Court may conduct a hearing "when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Due to the lack of clarity surrounding damages, the Court sets down an evidentiary hearing on September 10, 2025 at 11 a.m. In the alternative, the Court will accept a supplemental certification clearing up the

issue, to be filed no later than August 13, 2025, and will notify counsel if the submission is sufficient to make a hearing and further proofs unnecessary.

### V. Conclusion

For the reasons set forth above, the Court grants All Tests' motion for default judgment, except as to its requested damages. An appropriate order will follow.

Date: July 23, 2025

*/s/ Katharine S. Hayden*
Katharine S. Hayden, U.S.D.J.